United States District Court
Southern District of Texas

**ENTERED**

April 25, 2024
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| TODD MASON, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:22-cv-3454 |
| | § | |
| RBC CAPITAL MARKETS, LLC., | § | |
| | § | |
| *Defendants.* | § | |

## ORDER

Pending before the Court is Defendant RBC Capital Markets, LLC's ("RBC" or "Defendant") Motion for Summary Judgment. (Doc. No. 16). Plaintiff Todd Mason ("Mason" or "Plaintiff") responded in opposition. (Doc. No. 17). RBC replied. (Doc. No. 19). For the reasons below, the Court GRANTS RBC's motion. (Doc. No. 16).

### I.    Background

This case arises out of Mason's allegations of discrimination and retaliation against his former employer, RBC. Mason, a black man, began working for RBC in early 2007 and continued to work for RBC until his termination in 2020. Mason reported to two supervisors during his employment: Complex Operations Manager Cindy Ponder from February 2007–January 2019, and Administrative Complex Manager Tami Worrell from January 2019–June 2020.

Mason complains that he was "routinely exposed to a culture of contempt for blacks." (Doc. No. 17 at 9). Specifically, he alleges that Ponder "repeatedly made disparaging remarks about black people and their competence." (*Id.*). Although Mason admits that he received good performance reviews from Ponder, he alleges that he did not receive pay raises and was not promoted.  (*Id.*). In 2019, Mason assumed a new position as Branch Service Manager, in which

Worrell became his new manager. According to Mason, Worrell made advances to him, and he reported her conduct to management. He believes that he was then retaliated against for reporting these advances. He contends that this retaliation resulted in him being investigated and ultimately terminated. (Doc. No. 17 at 17). He also contends that his termination was related to his being diagnosed with heart disease and gout.

RBC disputes Mason's characterization of the facts. RBC has provided evidence that Mason not only received high ratings from Ponder in his performance reviews, but also received salary raises and bonuses from Ponder. *See* (Doc. No. 16, Ex. A–Ex. U, *Plaintiff's Performance Reviews and Year End Compensation Summaries*). These are summarized in the chart below.

| Year | Performance Rating | Salary Increase | Bonus |
|------|--------------------|-----------------|-------|
| 2010 | Outstanding | None | None |
| 2011 | Outstanding | Yes | Yes |
| 2012 | Outstanding | Yes | Yes |
| 2013 | Outstanding | Yes | Yes |
| 2014 | Outstanding | Yes | Yes |
| 2015 | Exceptional | Yes | Yes |
| 2016 | Exceptional | No | No |
| 2017 | Exceptional | Yes | Yes |
| 2018 | Exceptional | Yes | Yes |

(Doc. No. 16 at 8). Additionally, Ponder denies making any of the racial remarks that Mason alleges. *See* (Doc. No. 16-1, Ponder Dep. 62:18-21; 65:23-25) (denying that she ever said that "black people don't make that much money when he asked for a raise" or that "black people are not smart enough to work here.").

2

RBC further maintains that after Mason was promoted to Branch Service Manager in 2019, Worrell rated him "Outstanding," in his 2019 performance Review. (Doc. No. 16, Ex. W). In his new role, Mason was given a corporate purchasing card. Upon examining a spreadsheet of Mason's charges on the corporate purchasing card, Worrell found 22 unexplained charges totaling $1,784.18 for the period February 14, 2019, to April 13, 2020. (Doc. No. 16 at 10). According to RBC, many of the charges appeared to be for expenses of a personal nature that had nothing to do with Mason's duties with RBC, including meals, hotel rooms, and sports-related purchases. (Doc. No. 16, Ex. Z). After Mason was unable to provide receipts, participants, or business purposes for the charges, RBC's Employee Relations department initiated a formal investigation on June 5, 2020. (Doc. No. 16, Ex. BB). Soon after the formal investigation had begun, Mason sent an email on June 16, 2020 to Andy Teller, the Complex Director, alleging that Worrell had been treating him differently and that she had "accused" him of being gay. Additionally, Mason alleged that Worrell had invited him for drinks and had used the company mail system for personal packages. While Employee Relations did determine that Worrell had used the mail system for personal packages, its investigation found that the other concerns raise by Mason were not substantiated.

Employee Relations then resumed its review of Mason's unexplained charges. The investigation concluded that Mason had used the corporate purchasing card for personal expenses. As a result, RBC terminated Mason on June 30, 2020.

Several months later, on March 31, 2021, Mason filed his Charge of Discrimination ("Charge") with the EEOC. (Doc. No. 16, Ex. GG). In the Charge, Mason complains only of alleged treatment by Worrell, after he was promoted to Branch Service Manager. (*Id.*). Mason does not include any information about Ponder in the Charge.

3

On October 6, 2022, Mason filed this lawsuit against RBC alleging (1) race-based discrimination under Title VII, (2) retaliation under Title VII, and (3) violations of the Employee Retirement Income Security Act ("ERISA"). RBC now moves for summary judgement on all claims.

## II. Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara*, 353 F.3d at 405. It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

4

### III.  Analysis

RBC moves for summary judgment on all three of Mason's claims: (1) race-based discrimination under Title VII based on Ponder's conduct while she was his supervisor from 2007 to 2019; (2) sex-based retaliation under Title VII based on his 2020 complaint against Worrell; and (3) violations of ERISA based on the allegation that RBC terminated him in 2020 because he had medical conditions of which certain employees were generally aware. RBC contends that Mason cannot raise a genuine issue of material fact to survive summary judgment on any of these claims. Specifically, RBC argues that Mason cannot establish a *prima facie* burden on his claims, and even if he could, summary judgment is warranted because RBC terminated Mason for legitimate non-discriminatory reasons and Mason cannot raise a fact issue as to pretext.

As a threshold matter before examining the merits of Mason's claims, the Court must determine whether to strike the sole piece of evidence provided by Mason in his response to summary judgment—his affidavit (Doc. No. 17). RBC filed a Motion to Strike the Affidavit by Todd Mason. (Doc. No. 20). This affidavit is the only evidence presented in opposition to summary judgment, and RBC argues that it "is riddled with unsupported and conclusory statements which exceed Plaintiff's personal knowledge, contradict prior his deposition testimony without explanation, and contain inadmissible speculation." (*Id.* at 1).

A plaintiff cannot create a genuine issue of material fact by submitting an affidavit after a motion for summary judgment has been made that contradicts his earlier deposition testimony. As the Fifth Circuit noted, a district court properly strikes a plaintiff's affidavit after finding that it "directly contradicts his deposition in that he had a remarkable recall of past events that he did not possess during the taking of his deposition." *McCulley v. JTM Industries, Inc.*, 116 F.3d 1477, 1997 WL 304208, at *2 (5th Cir. 1997); *see also Van T. Junkins v. U.S. Industries*, 736 F.2d 66, 657 (11th Cir. 1984). Such affidavits are known as "sham affidavits." "When a party has given

clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, the party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Id.* Thus, to the extent that any portion of Mason's affidavit contradicts his prior deposition testimony, the Court strikes those portions. The Court will only address specific objections below if the evidence becomes relevant to the Court's analysis.

### *A. Discrimination Claims based on conduct before June 4, 2020 are Time-Barred*

RBC first argues that Mason's discrimination claims based on alleged comments by Ponder between 2007 and 2019 are time-barred under Title VII. An aggrieved party must file his or her complaint not more than 300 days after the alleged act of unlawful discrimination. *Simotas v. Kelsey-Seybold*, 211 Fed. Appx. 273, 275 (5th Cir. 2006). Here, Mason filed his Charge with the EEOC on March 31, 2021. (Doc. No. 16, Ex. GG). Thus, Mason timely asserted only those allegations that pertain to events or incidents occurring after June 4, 2020—the date that is 300 days before he filed his Charge. *Id.*

RBC contends that Mason's race-discrimination claim is based upon numerous events or incidents that occurred well outside the 300-day period. In particular, all of the alleged actions and comments by Ponder occurred before June 4, 2022. Accordingly, RBC maintains that Mason cannot rely on such events in order to support his claims. *See Abrams v. Am. Airlines Inc.*, 302 Fed. Appx. 242, 243 (5th Cir. 2008) ("Abrams has a viable claim … only for acts that occurred … 300 days before she filed her [Charge of Discrimination]"). Indeed, the only timely alleged adverse action is his termination on June 30, 2020. (Doc. No. 7 at ¶¶ 13-14). RBC urges the Court to dismiss Mason's claims arising before his termination.

6

Moreover, RBC contends that the race-discrimination claims based on Ponder's alleged conduct between 2007 and 2019 are administratively barred because Mason's EEOC Charge never complained of discrimination by Ponder. Instead, his charge focuses solely on his termination and discrimination that occurred after he was promoted to Branch Services Manager in 2019. (Doc. No. 16, Ex. GG). While charges are liberally construed, courts "will not consider claims that were not asserted before the EEOC or that do not fall within 'the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 472 (5th Cir. 2016) (citation omitted).

Plaintiff does not address this argument anywhere in his Response. (Doc. No. 17). He does not refute that all of the alleged racial misconduct by Ponder and Worrell occurred before June 4, 2020, and he does not provide any evidence of race-related misconduct occurring after this date. Instead, in his response and affidavit, he merely rehashes allegations about acts that purportedly occurred between 2007 and 2019. The *latest* date Mason provides for any alleged racial misconduct is December 2019, at which point Worrell allegedly told him "that RBC does not trust Black men to become advisors." (Doc. No. 17-1 at 4). Thus, the summary judgment evidence before the Court demonstrates that Mason's race discrimination claim is based upon conduct occurring *before* June 4, 2020. Accordingly, this claim is time-barred by the 300-day lookback period, and the Court GRANTS RBC's motion for summary judgment on this issue.

### B. Retaliation

In the absence of direct evidence, Mason must establish his retaliation claims by circumstantial evidence using the three-part "modified *McDonnell Douglas* approach." *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010). Under this framework, Mason must first establish a prima facie case of discrimination/retaliation. *McMichael*

*v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 456 (5th Cir. 2019); *Moss v. BMC Software*, 610 F.3d 917, 922 (5th Cir. 2010). If Mason makes a *prima facie* case, the burden shifts to RBC to articulate a legitimate, nondiscriminatory/nonretaliatory reason for its actions. *McMichael*, 934 F.3d at 456; *Moss*, 610 F.3d at 922. RBC's burden in this second phase is one of production, not persuasion, and involves no "credibility assessment." *Black v. PanAmerican Labs.*, L.L.C., 646 F.3d 254, 259 (5th Cir. 2011). Once RBC articulates a legitimate, nondiscriminatory/nonretaliatory reason, the burden shifts back to Mason to prove pretext. *Id.* at 259. To show pretext on his claims, Mason must put forth evidence to rebut each of the reasons RBC articulates and show that his protected status or protected activity motivated RBC or was a "but for" cause for RBC's actions. *McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116 (5th Cir.1983); *McMichael*, 934 F.3d at 456. Throughout this entire process, Mason bears the ultimate burden of persuasion. *Jackson,* 602 F.3d at 378.

To establish a *prima facie* case of retaliation, Mason must establish: (1) he engaged in protected activity; (2) he experienced a materially adverse employment action; and (3) a causal link between the protected activity and the adverse action. *Hernandez v. Yellow Transportation, Inc.*, 670 F.3d 644, 657 (5th Cir. 2001).

RBC argues that Mason cannot make out a *prima facie* case of retaliation because he did not engage in protected activity under Title VII and because there is no evidence of a causal link between his general complaint to Andy Teller and his termination. As noted above, after the Employee Relations department interviewed Mason as part of its investigation into charges on his corporate purchasing card, Mason emailed Teller with various complaints regarding Worrell. In the email, Mason complains that Worrell accused him of being gay, called him at all times of the

night, invited him to happy hours and sporting events, and asked him to use the company mail services for her personal tasks.

RBC contends that this email does not constitute protected activity. The Fifth Circuit has "consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." *Davis v. Dallas Indep. Sch. Dist.*, 448 F. Appx. 485, 493 (5th Cir. 2011). Even if this email could be considered protected activity, RBC argues that Mason does not have any evidence that this complaint was connected in any way to RBC's decision to terminate his employment. Mason admits that he does not know who at RBC retaliated against him, and that his only evidence of retaliation is that he submitted a complaint and was "immediately let go." (Doc. No. 16, Mason Dep. 85:5-87:24; 155:14-1).

In addition, RBC argues that if the Court concludes Mason could establish a *prima facie* case of retaliation, his claim still fails because RBC had a legitimate, nonretaliatory reason for his termination. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). "If the employer produces any evidence, which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action, then the employer has satisfied its burden of production. *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 296 (5th Cir. 1995) (quotation omitted). Here, RBC argues (and provides evidence) that it terminated Mason after an investigation concluded that Mason had used his corporate purchasing card for a series of personal expenses in violation of RBC's Code of Conduct. *See* (Doc. No. 16, Exs. CC, FF, GG). Mason also admits that he did not contact anyone at RBC after he left to say there had been a misunderstanding. (Doc. No. 16, Mason Dep. 49:12-18; 52:7-9). RBC maintains that these unexcused, personal expenses are a legitimate, nonretaliatory reason for terminating Mason and that he cannot present evidence that this reason is pretextual.

9

Not surprisingly, Mason disagrees. While Mason provides pages of legal standards for retaliation, his actual argument is quite brief, and his evidence is virtually nonexistent. Mason classifies his email to Teller as a "sexual harassment complaint against Tami Worrell." (Doc. No. 17-1 at 8). He alleges that "when [he] complained to management about her conduct, he was 'investigated' and then terminated." (Doc. No. 17 at 16).

The Court finds that Mason's affidavit and these few sentences of argument fail to raise a fact issue as to his *prima facie* case or as to pretext. As an initial matter, Mason's allegation that he was investigated *after* he complained about Worrell is not supported by any evidence. Instead, evidence shows that he was already actively under investigation for the credit card purchases when he complained about Worrell. Thus, he cannot raise a fact issue as to causation between his alleged protected activity and his investigation. Additionally, he has provided no evidence that the decisionmaker responsible for his termination knew about the email he sent to Teller. Moreover, he has failed to offer any evidence that RBC's explanation for termination—his personal expenses on the corporate purchasing card—is pretextual. For these reasons, the Court GRANTS RBC's motion for summary judgment on Mason's retaliation claims.

## C. ERISA Claims

Finally, RBC moves for summary judgment on Mason's ERISA claim. Mason's lawsuit alleges that RBC terminated him after RBC "became aware that [he] would require major medical intervention" in violation of ERISA's anti-retaliation provision. (Doc. No. 7 at ¶¶ 24-28). In order to establish a *prima facie* case of discriminatory retaliation under ERISA, Mason must prove that RBC terminated him "in retaliation for exercising an ERISA right or to prevent attainment of benefits to which he would have become entitled under an employee benefit plan." *Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 423 (5th Cir. 2007) (quotation marks omitted). An essential element of a claim for retaliation is proof of the employer's "specific discriminatory intent." *Id.*

10

Courts employ the McDonnell Douglas burden-shifting framework to ERISA retaliation claims as well. *Parker v. Cooper Tire & Rubber Co.*, 546 Fed. Appx. 522, 526 (5th Cir. 2014). Mason must make a *prima facie* showing of the following: "(1) adverse employer action (2) taken for the purpose of interfering with the attainment of (3) any right to which the employee is entitled." *Montes v. Phelps Dodge Indus., Inc.*, 481 F.Supp.2d 700, 712 (W.D. Tex. 2006).

RBC contends that there is no evidence that it terminated Mason to prevent him from attaining any benefits to which he would have been entitled. RBC points to Mason's deposition testimony, in which he testified that he suffers from gout and heart disease, that he was diagnosed with these in 2015 and 2017, respectively. He claims that some of his coworkers were aware of these medical conditions. (Doc. No. 16, Mason. Depo. 94:21–96:9). Later in his deposition, however, Mason admitted he has no evidence that his termination was in any way related to any medical condition. (*Id.* at 98:15–100:9). When asked what evidence he has to support his assertion that his "termination had anything to do with RBC wanting to deny [him] retirement or medical benefits," he simply responded, "That's what I believe." (*Id.* at 99:22-25). RBC argues that Mason's subjective belief is not evidence of discriminatory intent or evidence that his termination was related at all to his medical conditions.

Mason's argument in response is vague and unspecific. Again, the only evidence supporting his response is his affidavit. In the affidavit, Mason mentions his medical conditions only briefly. He states that he was diagnosed with Congestive Heart Disease "while working for RBC" and that he reported this to his managers. (Doc. No. 17-1 at 8). He then states:

> In 2020, I had an episode where I passed out at work. I went to my physician, Dr. David Portugal. I was at the doctor's office for more than five (5) hours. He increased my blood pressure medication and ordered me to stay off at home for a while because it was a serious condition. He ordered several follow-ups, but I lost my job and had no coverage or money and was unable to follow up with the treatments.

11

(*Id.*). As noted, this account states only that this episode occurred in 2020 but does not provide a more specific date. Consequently, the Court is unaware of when this event occurred in relation to Mason's termination. Even if Mason could demonstrate temporal proximity of the events (which he has not), temporal proximity alone is not enough to raise a fact issue that Mason's termination was intended to interfere with his medical benefits. *See Dixon v. Moore Wallace, Inc.*, 236 Fed. Appx. 936, 938 (5th Cir. 2007) ("[w]hile very close temporal proximity alone may be adequate to establish a *prima facie* case of retaliation in some instances, temporal proximity alone is insufficient to prove but for causation."); *Chambers v. Raines Elec., L.P.*, 2005 WL 3555118, at * 3 (N.D. Tex. Nov. 1, 2005) (holding evidence of temporal proximity alone is insufficient to meet *prima facie* burden for claim under ERISA).

Considering Mason's lack of evidence, the summary judgment standard, and applicable law, this Court hereby GRANTS RBC's motion for summary judgment on Mason's ERISA claim. There is no genuine issue of fact that RBC terminated Mason for the purpose of interfering with the attainment of benefits.

## IV.   Conclusion

For the foregoing reasons, the Court hereby GRANTS RBC's motion for summary judgment. (Doc. No. 16).  RBC's motion to strike the affidavit of Todd Mason is also GRANTED in part. (Doc. No. 20). Plaintiff failed to raise a genuine issue of material fact on any of his claims. The Court will enter a take nothing final judgment in a separate order.

Signed at Houston, Texas, this 25th day of April, 2024.

Andrew S. Hanen
United States District Judge

12